1553-54 Appalachian Regional Health Care, Inc. v. US Nursing Corp. Oral Argument Not to Exceed 15 Minutes per Side. Mr. Lickensterfer for the Plaintiff Appellant. May it please the Court, I'm Matt Lickensterfer on behalf of the Appellant Appalachian Regional Health Care. Your Honors, the District Court erred in dismissing this action for lack of an Article III case or controversy because, first, primarily, the complaint alleged an ongoing breach of contract, and secondarily, because indemnification disputes are justiciable controversies while an underlying action is pending but not yet decided. As your Honors are well aware, the Article III case or controversy requirement involves a three-factor test. First of all, that the injury in fact that exists is concrete and particularized. Here the injury in fact, as I indicated, was an alleged ongoing breach of a contractual relationship as well as a dispute about the interpretation of that contract. It was not an academic issue. The contract was implicated in a pending litigation. So this was not a hypothetical exercise or injury that was alleged. The second constitutional requirement for a case or controversy is that there's a connection between the injury and the conduct at issue such that the injury is fairly traceable to the defendant's action. That's easily satisfied here. It's the defendant Appalee's action in the underlying litigation in Kentucky State Court that is the cause of the injury alleged in the complaint. Third constitutional requirement is the likelihood that the injury that's alleged would be redressed by a favorable decision by the District Court. This one is also easy, Your Honors. A ruling in favor of Appalachian Regional Healthcare would have resolved the breach alleged and would have interpreted the contract to resolve the party's differences about what that contract required. The District Court's error was in treating this case as nothing more than a potential future injury that could occur only if several subsequent conditions were met, almost as if there were a ripeness problem even though the District Court did not characterize it that way. Was that raised by the other side, your opponent, about the ripeness? Not that I remember, Judge Seiler. And certainly Judge Thapar did not say that this was an unripe dispute. You won't know what the damages are though, I guess, until the case is over. You would not know what damages for indemnification were until the case is over. But you certainly could have ongoing existing damages for the breach of the duty to defend at the time. You wouldn't know the final figure on that unless the other side furnishes counsel and so forth. Yeah, absolutely correct, Judge Seiler. But I think that's true. We have analogized this case to a coverage action, which as you well know... But it isn't, because this is not an insurance case. I'm sorry, what's the last part, Judge Batchelder? That it isn't a coverage action because this is not an insurance case. Correct, correct. It is not. We have analogized it to one because, for this reason, the similarity between the two types of actions are what's at issue is a duty to indemnify and in most cases... You don't claim that there's any breach of the duty to indemnify. As I read the complaint, there is an argument that the duty to indemnify has been breached or has at least been jeopardized by conduct involving in the underlying litigation. Explain to me how. The theory is that what is going on with the assertion of the borrowed servant defense in the underlying litigation and the party's communications back and forth about that is that the carrier is attempting to avoid liability here and to keep it residing with U.S. Nursing. Now, the threat to indemnification provision and obligation from the standpoint of Appalachian Regional Health Care is that U.S. Nursing won't be able to fulfill that obligation. Did you just tell me, though, that you think that the threat really comes from U.S. Nursing's insurance carrier? It's behind the scenes. We believe that the carrier is behind the scenes. We believe that's why this defense is being asserted. But that's not a breach from U.S. Nursing. Well, it may or may not be, Judge Batchelor. I certainly understand the view. Because your view would be, would it not, you don't care whether they have insurance. They agreed to indemnify. They will indemnify. They can fight with their own. Is it? It is in the sense that they may not be able to fulfill that obligation. Isn't that sort of a... Doesn't that happen in any contract? You can't say that somebody's breaching the contract because they may not have the money to fulfill the contract in the future. I don't disagree with the points that either you're making, Judge Batchelor, or you're making, Judge Boggs. I don't know that that's a winning argument, ultimately. But the argument is, the conduct is threatening the viability of that provision. I was more interested in the question of whether you feel that they, that their statement, which as I read it just reiterates the contract, means that they will indemnify you for your litigation costs. As I understood, at least the most persuasive argument to me was that your litigation costs, at a minimum, are being increased. They say you're in this case anyway, which is correct. But if they are undertaking tactics that enmesh you more deeply and require more defense, then that is a damage to you. Are you concerned about whether they're going to pay your litigation expenses? Yes, because of the concern just expressed that we're not sure that. So your concern is only because of their ability, not their desire? I was asking when they say in one of their answers that we will honor our duty to indemnify, do you have any concern that that's only going to be money judgments and not litigation expenses? Or are you satisfied with their assurance there? Yeah, I'm not sure our side is entirely satisfied with the assurance, because the assurance was contained in a proposal to settle this aspect of the dispute. And it's heavily caveated, to be frank. So I think it's, there is in most, the primary concern, Judge Boggs, is about the ability to pay. But the secondary concern is that they're going to pay there is an effort to evade the obligation altogether. And generally... So how are they attempting to evade altogether when they have explicitly said that they will indemnify? Because they may not be able to, they may not be able to comply. For purposes of where we are at this stage of the proceedings, aren't you sort of saying that if we had some ham, we could have a ham sandwich if we had some bread, and you're concerned about the sandwich? Well, there's an element of that on the indemnification aspect, Judge Batchelder. But I don't think there's any element of that on the ongoing breach of the duty to defend. And whether or not the assertion of the defense... Well, they haven't yet breached that, have they? I mean, they're... I'm sorry, go ahead. No, that's okay. I'm here to answer your questions. So I would say they have breached that already because the assertion of the defense is completely inconsistent with the obligation to defend and hold harmless Appalachian Regional Health Care. If this didn't have this borrowed servant sort of part, and you were sued, would you tender the defense, and they would simply undertake the defense? If Appalachian Regional Health Care had not been sued... No, if you were sued, but USN wasn't going to assert borrowed servant, that is simply that they said, well, you know, I was injured, I was in the hospital, I'm going to sue everybody in sight, including you, because they were in your hospital, would you normally have simply tendered the defense, and they would have undertaken it? I think that's likely in that scenario, Judge Boggs. I mean, obviously, it would depend on other things in the context of however that arose, but I think that's likely. And, of course, you can't do that here if they're effectively adverse to you. That's right, and, you know, to put a cap on my answer to Judge Batchelor's question, we think that the assertion of the defense and taking that position just cannot be reconciled with the duty to defend. I mean, it's the antithesis of defending. Something different. As I read Judge Thapar's opinion on the motion to reconsider, which is sort of the first time that he deals with this argument about the litigation expenses, and basically he throws that out, saying you didn't raise it first time around, and therefore on a motion, a 59 motion to reconsider, you know, I don't have to deal with it. What's your answer to that? That is, how did you, in fact, raise it in the initial pleadings? To be perfectly candid, Judge Boggs, I think Judge Thapar is correct about that. It was not raised expressly. What was raised expressly was generally breach of the duty to defend on an ongoing basis. The specific that was discussed in connection with that was the borrowed servant doctrine defense. I mean, to me, it wasn't trial counsel, so I don't know. So I'm looking at the document, which is the supplemental objections to the motion to dismiss, which is document 24, page ID, starts at 277. At 285, which is page 9 of 11, at the heading, there's a long paragraph about your litigation expenses, and I guess I had thought that that was the best place that would be a refutation to Judge Thapar, but you're not relying on that? Well, I thought your question was, had we raised it? Because if he's right, then you should lose, even if you're right on the merits, if you didn't raise it initially. I thought your question was about an earlier stage of the litigation, Judge Boggs. I apologize. This did come before the judgment. This was not a post-judgment argument. Correct. That's what I was looking to see, because as I read it, he didn't, in effect, knock you out on the merits so much as saying, you didn't raise it the first time. Tough luck. So is that paragraph on page 9 of 11, is that the place to look to confirm or deny Judge Thapar's ruling in the motion to reconsider? I think it certainly is, because I don't think the issue of litigation expenses is raised prior to this, Your Honor. Well, but you don't need to be prior to this. This is prior to the judge's ruling. OK, understood. All right, fine. Understood, yes. Thank you. Yes. Time's expired. Thank you very much, Your Honors. Good morning, Your Honors. May it please the Court, my name is Sam Allman, and I represent the Appellee U.S. Nursing Corporation. Your Honors, before I go into my argument, I'd like to address a few points that were raised during Appellant's argument. The issue of ripeness was raised in U.S. Nursing's motion to dismiss. It wasn't briefed in this court, because Judge Thapar didn't rely on that, and the briefs were more focused on the district court's work. To go to the issue that Your Honors were just discussing with Appellant's counsel, whether there is a breach of a so-called duty to defend under the staffing agreement for ongoing defense costs, Your Honors, the complaint doesn't allege that U.S. Nursing should pay for the defense costs of ARH, so there is no allegation of a breach based on the failure to pay defense costs. What does duty to defend typically include? Well, Your Honors, it depends whether you're referring to the contract in this case, because I think there was some conflation of the contract here with an insurance contract, and there's a critical distinction here, because the contractual provision that ARH is relying on here is a paragraph in the staffing agreement, D-15, that says U.S. Nursing will indemnify, defend, save, and hold harmless ARH against any negligence of U.S. Nursing's employees that arises. But unlike an insurance contract, it doesn't say that U.S. Nursing will defend ARH against any allegations of negligence, and so it only applies to liability that arises. No liability has arisen in the profit case, so no obligation under that provision of the contract has even arisen at this point. So nothing has been breached because there is no obligation under that provision at this point in time. Let me ask you about your statement in, I've forgotten which document it is, where you reassert that you will honor that clause, although you don't interpret what that clause means. Do you interpret that, or are you willing to state that you will reimburse them for their litigation expenses? Or do you say, what, you don't owe it unless they lose? Well, Your Honor, there's never been any claim for their litigation expenses in the complaint. So as I read that provision, well, maybe a better way to answer this is to refer you to the complaint, because if you look at the Exhibit C to the complaint, which is incorporated by reference in the complaint, the very first paragraph of that letter states that Appalachian Regional wants assurances from U.S. Nursing, regarding applicable insurance coverage for Nurse Constance Foote and indemnification of ARH. Sorry, Counselor, I missed the start. What page are we on? Page ID number 37. 37, okay, I'm getting there. All right, that's back to your letter. This is the letter from ARH, which they incorporated in their complaint. This makes it clear that what ARH was concerned about is, quote, indemnification of ARH in the Profit v. U.S. Nursing case now pending in the Electoral Circuit Court. There's no reference to any defense costs. I thought that they were concerned. You just said they were concerned about the costs of that litigation. Did I miss that? Let's go to exactly what paragraph you're focusing on. Certainly the very first paragraph under the salutation, Dear Paula. Okay, following our discussions. But this is the letter attached to the complaint, applicable insurance. Indemnification of ARH in the Profit v. Nursing. Well, in the doesn't distinguish between paying an ultimate money judgment and all other costs involved, does it? It just is in the. Well, another place in the complaint where this may be more clear is paragraph 27D, which is page ID 7. All right, that's where I was, actually. And it's creating a situation in which they may become liable for damages, which they are incapable of indemnifying. Okay, I mean, that says what it says, but it doesn't say that we're not concerned about litigation expenses, because 28 says, as well as the prospect of significant legal expenses in the many thousands of dollars. But when I asked the first question, it was not what's in the complaint. It was what's your position, if any. So obviously you can say, well, as part of the argument at one level, we claim that there's nothing in the complaint, so we should win, throw this case out. But I'm asking you, if we have the case before us, are you willing to assert or commit to paying their litigation expenses come hell or high water? Your Honor, that's an issue that hasn't arisen. What I know is the only issue that's been litigated in this case is that there's indemnification. So your answer is we're not willing to commit. Well, I'm not saying you're denying it, but at least at this point you're not willing to pay. Standing here today, I'm not in a position to say that, because it hasn't arisen. Well, the answer is no, because you're not willing to. It's arisen now because I just asked it. It hasn't arisen between the parties. ARH hasn't pursued that in this litigation. Well, doesn't that paragraph you're talking about, 27B, doesn't it say includes an obligation to indemnify, defend, and hold harmless? The paragraph in the staffing agreement? In the complaint you were talking about. It refers to the paragraph. I was just reading, because you said 27B, indemnify, defend, and hold harmless, ARH. What does that mean? Indemnify, defend, and hold harmless. Well, it's interesting because ARH hasn't alleged, has never alleged in the complaint or explained in this litigation what additional obligations it believes that imposes, if any, beyond indemnification. Well, and defend is a pretty obvious thing that you do in everyday law, right? Well, in this case it's – We didn't do it, or they didn't do it, or whatever. Your Honor, I actually don't believe it's obvious in this contract, because typically in insurance contracts that include a duty to defend, the duty to defend provision in an insurance contract specifies that the insurer will defend the insured against allegations of negligence, even if those allegations ultimately prove to be groundless. But what the provision here says is that U.S. Nursing will indemnify, shall indemnify, defend, save, and hold harmless ARH against all liability or damages that arises from the negligent or intentional acts of U.S. Nursing's employees. So it applies to the liability that arises. No liability has arisen. So it's – the language is different from an insurance contract. It's sort of odd in terms of the – indemnify is a sort of a post facto word. Defend is a pre facto, anti facto word that if the obligation to defend means anything, it's got to mean something having to do before the result is reached, isn't it? It's unclear. I mean, it may not be as broad as an insurance coverage, but it's got to mean something, doesn't it? I don't know that that's necessarily the case, and here's why. Because it includes – that provision includes four terms, indemnify, save, defend, and hold harmless. Well, hold harmless is defined in Black's Law Dictionary as synonymous with indemnify. So you already have two words that are synonyms being used together. It's unclear what save means, but in that context, it wouldn't be unreasonable that these are – this is boilerplate language. Why doesn't paragraph 28 explain what defend means? Paragraph 28 goes into some detail about what these claimed breaches of the job staffing agreement have exposed ARH2 and says, have exposed ARH2 a significant risk of liability in a civil action, as well as the prospect of significant legal expenses in the many thousands of dollars to not only defend itself in said civil action to a much higher degree than otherwise would have been required, but addition there to the retention of legal counsel. I mean, why isn't that a pretty clear explanation of what it is they're complaining about here? I think what paragraph 28 alleges is it alleges the harm that ARH believes it suffered, but the complaint alleges that the act of U.S. nursing that constituted a breach, according to ARH, was its assertion of the borrowed servant defense, not any failure to pay defense costs. The complaint alleges what it says is U.S. nursing breached the contract by arguing the borrowed servant defense, and we were harmed because now we're having to pay defense costs in the profit case. And that argument, that doesn't state a claim for breach of contract, because to state a claim you have to allege a breach. You also have to allege damages caused by the breach, and the complaint doesn't plausibly allege that any damages ARH has suffered were caused by U.S. nursing arguing the borrowed servant motion. It says to respond to a legal position taken by a defendant contrary to the job staffing agreement. I mean, isn't that the connection? That might be the closest that the complaint comes. It sounds pretty straightforward to me. The problem with that is there are no plausible facts alleged as to why ARH responded to a position taken by U.S. nursing, because the borrowed servant doctrine didn't expose ARH to any additional liability that it wasn't already exposed to. It didn't put ARH in harm's way. ARH is a defendant in the profit case because it was sued by the plaintiff. In the profit case, the plaintiff sued Nurse Constance Foote, who was an employee of U.S. nursing, and also sued Nurse Sheila Hurt and Nurse Roxanna Parsons, who were employees of ARH. In the underlying complaint in the profit case, which is in the record, the plaintiff stated a cause of action against ARH for vicarious liability for those three nurses, and ARH has not obtained summary judgment. Those are live claims in the profit case. That's the reason why ARH is a defendant. In fact, even if Nurse Foote were taken out of the profit case and got summary judgment, U.S. nursing would no longer be a defendant, but ARH would still be a defendant because it's facing liability in that case for two of its own nurses. We're not to that point yet, right? I'm sorry, Your Honor? We're not to that point yet in the state court case, right? Oh, no, Your Honor, we're not. The trial hasn't occurred in state court. What's the status of that case? My understanding is that it's been set for trial, but the trial hasn't yet occurred. So any injury or case or controversy that's premised on something that might happen in the state court case is totally hypothetical at this point because that trial still hasn't occurred. When you said that you didn't put them in harm's way, help me with that. Their argument, I thought, was you put them into greater harm's way. Obviously, a person can always sue them, and they have to deal with that, but my analogy is you and they are both inside a fort being besieged by people who are attacking the fort, and you say they're already in harm's way, and we just opened the door and let the other guys come in and attack them. That put them in greater harm's way. Your Honor, that's not what happened here. What happened is that the plaintiff in the profit case sued both U.S. nursing and ARH and alleged that both of them were liable for Nurse Constance Foote and with respect to ARH that was liable for two of its own nurses. So both ARH and U.S. nursing are facing vicarious liability claims for Nurse Foote. If the summary judgment motion that U.S. nursing filed in which it argued the borrowed servant defense had succeeded, then U.S. nursing would no longer be a defendant. But whether it succeeded or whether it was denied, which is what happened, ARH faced a vicarious liability claim for Nurse Foote either way. And combined with the fact that U.S. nursing has promised in writing, in a writing that's incorporated in the complaint and in multiple federal court briefs now, that we will honor our obligation to indemnify, hold harmless, save, and defend ARH, they don't face any risk of damages. But even taking the indemnification issue out of it, they faced liability for Nurse Foote. And even if, for that matter, even if Nurse Foote were taken out of the case, they would still face liability. That part's true, but then you'd be out of it as well. We would be out of it, but we would still... If you had your borrowed servant doctrine succeeded, they would be there alone, whereas when you're in the case, not only would potentially you defend them, but the course of the litigation might be that you would bear all the liability. That might be what the judge and jury would ultimately decide. But that doesn't change the harm that ARH faces, because to the extent that ARH is held liable for Nurse Foote, U.S. nursing will bear the liability for that. And the cost of defending it if you're out of the case? Well, the issue is it's only one of the three nurses for whom ARH is alleged to be vicariously liable was an employee of U.S. nursing, and it's a hotly contested issue in the state court whether Nurse Foote was actually the nurse who interacted with Mr. Profitt. So if Nurse Foote... I'm saying if you're out of the case, then you're not going to defend ARH at all, if Nurse Foote's still in the case. If Nurse Foote is in the case, then we will, as I said, we will honor our obligation under the indemnification agreement. And I'm not trying to be evasive, Your Honors. It's just that it's an issue that hasn't arisen, so I'm not in a position to answer. All right. Any other questions, judges? No. Okay. Thank you, counsel. Your time is expired. Thank you, Your Honors. Sir? Three minutes. All right. You may proceed. Thank you, Judge Boggs. I don't think I'll use it all. I just wanted to make a couple of quick points in answering the remaining questions. One is I wanted to take issue with the appellee's interpretation of the duty to defend language. Their argument that the arises from language means that the obligation doesn't kick in until after liability is determined makes that essentially a redundant term that is illusory. I think the better interpretation of that language is that what arising from negligence of one of U.S. nurses' employees means is that they're attempting to distinguish a claim that might arise from sexual harassment or anything else that might occur in the workplace. The second point I just wanted to make, Your Honors, was that at the end of the day, maybe our breach of contract theory is right and we succeed, and maybe it's wrong, but an awful lot of the arguments being proffered by the appellee are questions about the merits of that breach of contract argument as opposed to arguments about whether there was a live controversy here between the parties. Given that that is the issue on which Judge Tappar decided the case, I respectfully submit that he erred in that conclusion and ask that the case be remanded to him. Thank you, Counsel. Thank you, Your Honors.